**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DIALECT, LLC, | Civil Action No. 25-cv-10341 |
| *Plaintiff,* | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC D/B/A XFINITY; AND COMCAST OF NORTHERN ILLINOIS, INC., | |
| *Defendants.* | |

**COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Dialect, LLC ("Dialect" or "Plaintiff") files this Complaint for Patent Infringement and Damages against Comcast Corporation, Comcast Cable Communications, LLC d/b/a Xfinity, and Comcast of Northern Illinois, Inc. (collectively "Defendant" or "Comcast") and alleges as follows:

**INTRODUCTION**

1.      The novel inventions disclosed in U.S. Patent Nos. 7,398,209 (the "'209 Patent"); 8,447,607 (the "'607 Patent"); 9,263,039 (the "'039 Patent"); 9,734,825 (the "'825 Patent"); and 7,620,549 (the "'549 Patent") (collectively, the "Asserted Patents") in this case were invented by VoiceBox Technologies ("VoiceBox"). VoiceBox was a key pioneer in the fields of voice recognition technology and natural language understanding ("NLU") technology. These

technologies power a wide variety of applications and platforms used in smart phones, tablets, TVs, Internet of Things ("IoT") devices, and vehicle multimedia and navigation systems. VoiceBox spent more than a decade developing and building key early NLU inventions, producing one of the most valuable patent portfolios in the industry, according to the Institute of Electrical and Electronics Engineers ("IEEE") in 2013. The Asserted Patents in this case are the result of this substantial investment and research.

2.      The Asserted Patents, along with other former VoiceBox patents now owned by Dialect, are presently the subject of infringement lawsuits filed by Dialect against Bank of America, N.A. (asserting the '607 Patent, among others), Microsoft Corp. (asserting the '209 Patent among others).   Dialect also previously asserted the '825 patent against Samsung Electronics Co., Ltd., *et al.*; the lawsuit dismissed before Samsung filed a responsive pleading.[1]

## THE PARTIES

3.      Plaintiff is the current owner and assignee of the Asserted Patents.

4.      Plaintiff is a Texas limited liability company with its principal place of business located at 133 E. Tyler St., Longview, TX 75601-7216.

5.      Defendant Comcast Corporation is a corporation organized and existing under the laws of the state of Pennsylvania that maintains regular and established places of business throughout Illinois.  Comcast Corporation maintains employees and offices in this District. For example, the headquarters for Comcast Corporation's Greater Chicago Region are located at 33

---

[1] *See* Redacted Public Order Dismissing All Claims, ECF No. 18-1, *Dialect, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-00061-JRG (E.D. Tex. Aug. 30, 2023).

W. Monroe St., Suite 1900, Chicago, IL 60603. Comcast Corporation maintains suburban offices in this District at 1475 E. Woodfield #450, Schaumburg, IL 60173-4980.

6.     Defendant Comcast Cable Communications, LLC d/b/a Xfinity is a limited liability company organized and existing under the laws of the State of Delaware that maintains regular and established places of business throughout Illinois and in this District.

7.     Defendant Comcast of Northern Illinois, Inc. is a corporation organized and existing under the laws of the State of Illinois that maintains regular and established places of business throughout Illinois and in this District. Comcast of Northern Illinois, Inc. maintains a registered office in the State of Illinois at 801 Adlai Stevenson Drive, Springfield, IL 62703.

8.     On information and belief, Defendant develops, designs, manufactures, uses, distributes, markets, and offers infringing products and/or services, including Defendant's Xfinity Voice Remote (the "Accused Product") in the United States and within the Northern District of Illinois, and otherwise directs infringing activities to this District in connection with its products and/or services as set forth in this Complaint.

## JURISDICTION AND VENUE

9.     This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

10.     This District has general and specific personal jurisdiction over Defendant because Defendant has committed acts, directly or through intermediaries, in this District, giving rise to this action; is present in and transacts and conducts business in this District and the State of Illinois; and transacts and conducts business with residents of this District and the State of Illinois.

11. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Illinois.

12. Defendant has infringed the Asserted Patents within this District and the State of Illinois by making, using, distributing, marketing, offering, and/or importing in or into this District and elsewhere in the State of Illinois, products and/or services that infringe the Asserted Patents, including the Accused Products. Defendant, directly and through intermediaries, makes, uses, offers, imports, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in or into this District and the State of Illinois. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Illinois. Defendant widely promotes its Xfinity cable service, which includes the Xfinity Voice Remote, the Accused Product, in Chicago via multiple media channels, from television advertisements to outdoor advertising.

13. This Court has personal jurisdiction over Defendants pursuant to 735 ILL. COMP. STAT. 5/2-209 *et seq.*

14. Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within this District and the State of Illinois, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Illinois. For example, Defendant has sold, offered for sale, and/or used the Xfinity Voice Remote, the Accused Product, in this District or induced customers in this District to do so or contributed to them in doing so.

15. This Court also has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing

infringing products and services to the residents of this District that Defendant knew would be used within this District, and by soliciting business from the residents of this District. For example, Defendant provides a wide variety of services and devices in this District, including the Accused Product and services that work with the Accused Product.

16.     Accordingly, this Court's jurisdiction over the Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from Defendant's purposeful minimum contacts with the State of Illinois.

17.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1400(b) because Defendant has regular and established physical places of business in this District and has committed acts of patent infringement in the District.

18.     For example, Defendant offers its products and services throughout Illinois, including this District, by shipping, distributing, offering for sale, selling, and advertising its products and services through its websites, comcast.com and chicago.comcast.com, both accessible within this District, the latter further listing individuals who are employed by Defendant and who are further believed to live and work within this District.



**Comcast Greater Chicago Region contacts:**

*Press Information*

- Teddy Bailey, Manager of Public Relations, teddy_bailey@comcast.com
- Amanda Vallejo, Sr. Director of Region Communications, amanda_vallejo@comcast.com

*Community Investment and Sponsorship Information*

- Joe Higgins, Senior Director of External Affairs, joe_higgins@comcast.com

*Economic Development Information*

- Sean McCarthy, Vice President of Business Development and Strategic Initiatives, sean_mccarthy3@comcast.com

https://chicago.comcast.com/contact/; *see also* terms for the website, https://corporate.comcast.com/notices/terms (noting the website is a service of Comcast Corporation).

19. Defendant makes its Xfinity cable service and the Xfinity Voice Remote available in this District and specifically directs these services to this market. For example:



https://www.xfinity.com/local/il/chicago.

20.     Among other things, on information and belief, Defendant has a regular and established place of business in this District in at least the following locations: 33 W. Monroe St, Suite 1900, Chicago, IL 60603; 30 S Halsted St, Chicago, IL 60661; 1255 W North Ave, Chicago, IL 60642; 3145 S Ashland Ave, Chicago, IL 60608; 350 E. Cermak Road, Chicago, IL 60616; 1475 E. Woodfield #450, Schaumburg, IL 60173-4980. Defendant also has authorized sellers and sales representatives that offer and sell products pertinent to this Complaint through the State of Illinois, including in this District, and to consumers throughout this District.

## BACKGROUND

21.     In 2001, three brothers, Mike, Rich, and Bob Kennewick, founded VoiceBox to bring NLU to a wide array of computer applications. They recognized that the typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts, typically through verbal menus of a so-called "Command and Control" system. These rigid prompts limited how systems were used and inhibited the widespread adoption of speech-recognition systems. The brothers believed that VoiceBox could become the first company to improve voice recognition systems to enable people to interact with computer speech systems naturally and effectively.

22.     From its inception, VoiceBox engaged in intense research efforts to develop its NLU technology. As part of these efforts, VoiceBox Technologies achieved a significant milestone when it developed an early prototype called "Cybermind." As demonstrated on Seattle-area television news,[2] Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play a song.

---

[2] https://www.youtube.com/watch?v=DDcRyPnvWhw



23.    In addition, Cybermind enabled multi-modal user interactions. For example, Cybermind technology was used in desktop applications that could understand and respond to speech user input as well as non-speech user input.



24.    On information and belief, consumer focus groups being introduced to VoiceBox conversational voice technology described it as "cool," "unbelievable," "so fast," "it makes you feel like you're in the future already," and "I feel like I'm in the Jetsons."[3]

---

[3] https://www.youtube.com/watch?v=WCOGNnH-Bws

25.     Throughout its research and development efforts, VoiceBox realized that its technology could be deployed in a wide range of applications from connected home to mobile personal assistants.

26.     VoiceBox's groundbreaking work did not go unrecognized. By January 2012, VoiceBox had become a leader in NLU and conversational voice technology. Leading companies throughout the world, including Samsung, Toyota, Lexus, TomTom, Pioneer, Chrysler, Dodge, and Magellan used VoiceBox's award-winning and patented natural language understanding technology. VoiceBox had software applications that ran on smart speakers, in-car systems, smartphones, smart TVs, computers, tablets, e-readers, and personal navigation devices. As noted above, in November 2023, a Delaware jury determined that Amazon's "*Alexa*" platform, accessible through over 500 million devices throughout the world, including Amazon's *Echo* devices and the *Alexa* application for iOS and Android, also utilized VoiceBox's patented technology.

27.     In 2013, the Institute of Electrical and Electronics Engineers ("IEEE") ranked VoiceBox number 13 in patent power for the computer software industry, ranking between SAP AG and Sony Computer Entertainment Inc.

# IEEE Patent Power Rankings

Computer Software

| Rank | Company / Organization | Country of Headquarters | 2012 U.S. Patents | Pipeline Growth Index | Pipeline Impact | Self-Citations (%) | Adjusted Pipeline Impact | Pipeline Generality | Pipeline Originality | Pipeline Power |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Microsoft Corp. | United States | 2665 | 1.14 | 1.07 | 0.22 | 1.07 | 1.19 | 1.01 | 3909.67 |
| 2 | VMware Inc. | United States | 106 | 1.89 | 3.07 | 0.16 | 3.07 | 3.02 | 1.06 | 1966.63 |
| 3 | Citrix Systems Inc. | United States | 112 | 1.56 | 2.83 | 0.27 | 2.83 | 2.62 | 1.12 | 1441.86 |
| 4 | Symantec Corp. | United States | 379 | 1.34 | 1.54 | 0.16 | 1.54 | 1.63 | 1.01 | 1297.47 |
| 5 | Digimarc Corp. | United States | 94 | 0.9 | 5 | 0.88 | 2.08 | 4.8 | 1.12 | 944.96 |
| 6 | Oracle Corp. | United States | 913 | 0.92 | 1 | 0.12 | 1 | 1.13 | 0.98 | 930.36 |
| 7 | CommVault Systems Inc. | United States | 52 | 1.3 | 5 | 0.88 | 2.1 | 5 | 1.22 | 866.39 |
| 8 | Cadence Design Systems Inc. | United States | 158 | 1.15 | 2.45 | 0.15 | 2.45 | 1.76 | 0.89 | 699.87 |
| 9 | Adobe Systems Inc. | United States | 332 | 1.13 | 1.14 | 0.18 | 1.14 | 1.24 | 1 | 526.88 |
| 10 | Rovi Corp. | United States | 97 | 1.47 | 1.85 | 0.25 | 1.85 | 1.91 | 1.02 | 514.34 |
| 11 | TeleCommunication Systems Inc. | United States | 57 | 1.36 | 2.35 | 0.42 | 2.06 | 2.52 | 1.12 | 451.72 |
| 12 | SAP AG | Germany | 601 | 1.1 | 0.74 | 0.23 | 0.74 | 0.85 | 1.02 | 424.91 |
| 13 | Voicebox Technologies Inc. | United States | 11 | 1.83 | 5 | 0.65 | 3.26 | 5 | 1.29 | 423.56 |
| 14 | Sony Computer Entertainment Inc. | Japan | 220 | 1.33 | 1.1 | 0.36 | 1.03 | 1.26 | 1.08 | 409.7 |
| 15 | Bally Technologies Inc. | United States | 98 | 1.78 | 1.46 | 0.38 | 1.35 | 1.83 | 0.9 | 388.27 |
| 16 | Smith Micro Software Inc. | United States | 18 | 3 | 2.8 | 0.17 | 2.8 | 2.41 | 0.97 | 353.44 |
| 17 | McAfee Inc. | United States | 84 | 1.33 | 2.02 | 0.39 | 1.85 | 1.61 | 1.04 | 347.02 |
| 18 | Nuance Communications Inc. | United States | 160 | 1.15 | 1.19 | 0.3 | 1.19 | 1.56 | 1.02 | 345.99 |
| 19 | Synopsys Inc. | United States | 148 | 0.95 | 1.61 | 0.08 | 1.61 | 1.17 | 1.06 | 280.46 |
| 20 | Infosys Ltd. | India | 29 | 1.93 | 2.52 | 0.04 | 2.52 | 1.75 | 1.02 | 253.69 |

Source: IEEE Spectrum Patent Power 2013

28.     After learning about VoiceBox's technology, Toyota hired VoiceBox to build a sophisticated NLU speech interface for its Lexus automobiles. VoiceBox built the voice and NLU capability for Toyota's award-winning Entune multimedia system[4].

29.     Some of the most well-known technology companies and automotive companies in the world have paid, in the aggregate, hundreds of millions of dollars for access to VoiceBox's patented technology, through licensing of VoiceBox patents, including the Asserted Patents, and

---

[4] PRLOG Press Release Distribution, *Atlantic Toyota and Huntington Toyota Customers: Entune Wins Two Awards at CES in Las Vegas* (Jan. 31, 2011) https://www.prlog.org/11264790-atlantic-toyota-and-huntington-toyota-customers-entune-wins-two-awards-at-ces-in-las-vegas.html; BusinessWire, *VoiceBox and Toyota Form Strategic Relationship to Deliver In-car Voice Technology Innovations* (Jan. 9, 2012) https://www.businesswire.com/news/home/20120109006490/en/VoiceBox-and-Toyota-Form-Strategic-Relationship-to-Deliver-In-car-Voice-Technology-Innovations#:~:text=LAS%20VEGAS%2D%2D(BUSINESS%20WIRE,car%20voice%20produ cts%20and%20capabilities.

through adoption and deployment of VoiceBox's software platform and functionality in their products and services.

## THE ASSERTED PATENTS

30.     The VoiceBox inventions claimed in the Asserted Patents relate to groundbreaking improvements to voice recognition and NLU and have particular application in Defendant's Xfinity Voice Remote.

### U.S. PATENT NO. 7,398,209

31.     On July 8, 2008, the United States Patent and Trademark Office duly and legally issued the '209 Patent, entitled "Systems And Methods For Responding To Natural Language Speech Utterance." A true and correct copy of the '209 Patent is attached hereto as Exhibit 1.

32.     Dialect is the owner and assignee of all right, title, and interest in and to the '209 Patent, including the right to assert all causes of action arising under the '209 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

33.     The '209 Patent describes, among other things, novel systems and methods for receiving natural language queries and/or commands. '209 Patent, Abstract. The claimed invention makes significant use of context, prior information, domain knowledge, and user specific profile data to achieve a natural environment for one or more users. *Id.* As the '209 Patent explains, prior to its inventions, a machine's ability to communicate with humans in a natural manner was a difficult technical problem in need of a technical solution. As described in the specification, in the prior art "human questions and machine processing of queries may be fundamentally incompatible," because "a person asking a question or giving a command typically relies heavily on context and the domain knowledge of the person answering," whereas "machine-based queries" are "highly structured and are not inherently natural to the human user." *Id.* at 1:27-35. The

inventions described and claimed in the '209 Patent overcome these challenges in various embodiments, for example by providing a system that uses domain agents to organize domain specific behavior and information. *Id.* at 2:48-59. The inventions in various embodiments further include a system capable of parsing and interpreting the natural language query to "determine the domain of expertise required and context, invoking the proper resources, including agents." *Id.* at 3:53-54.

34. The novel features of the invention are recited in the claims. For example, Claim 1 of the '209 Patent recites:

> 1. A method responsive to a user generated natural language speech utterance, comprising:
>
> receiving the user generated natural language speech utterance, the received user utterance containing at least one request;
>
> maintaining a dynamic set of prior probabilities or fuzzy possibilities usable at each stage of processing the received user utterance;
>
> recognizing words and phrases contained in the received utterance using information in one or more dictionary and phrase tables;
>
> parsing the recognized words and phrases to determine a meaning of the utterance, wherein determining the meaning includes determining a context for the at least one request contained in the utterance based on one or more keywords contained in the recognized words and phrases;
>
> selecting at least one domain agent based on the determined meaning, the selected domain agent being an autonomous executable that receives, processes, and responds to requests associated with the determined context;
>
> formulating the at least one request contained in the utterance in accordance with a grammar used by the selected domain agent to process requests associated with the determined context;
>
> invoking the selected domain agent to process the formulated request; and
>
> presenting results of the processed request to the user, the presented results generated as a result of the invoked domain agent processing the formulated request.

'209 Patent, Claim 1.

35. Figure 6 of the '209 Patent, reproduced below, shows a block diagram of a process for determining the proper domain agents to invoke and properly formatting queries for the agents according to one embodiment of the invention.



**'209 Patent, Fig. 6.**

36. In explaining the reasons for allowing the claims, the United States Patent and Trademark Office described how the closest existing prior art did not disclose or teach the claimed combination of inventive elements.

> [T]he prior art of record does not disclose or reasonably suggest recognizing words using information from phrase tables in combination with the limitations of parsing to determine a meaning based on keywords, selecting a domain agent, and formulating a request in accordance with a grammar used by a selected domain agent . . . . *Halverson et al.* omits a grammar used by a domain agent associated with the determined context and one or more dictionary and phrase tables. *Kuhn et*

*al.* teaches a natural language parser that returns a probability score for retrieved information in response to a user request, and predefined grammars that are constructed based on goal-oriented tasks, but omits recognizing words based on a dictionary and phrase tables. While it is known to recognize words based on a vocabulary defined by a dictionary for speech recognition, the prior art of record does not disclose or reasonably suggest additionally utilizing phrase tables for speech recognition.

'209 File History, Notice of Allowance and Fee(s) Due (May 21, 2008), Notice of Allowability at 2 (attached as Exhibit 2).

37.     In April 2024, Google filed a petition for *inter partes* review of the '209 Patent. In October 2024, the Patent Trial and Appeal Board (the "PTAB") denied institution of *inter partes* review of the '209 Patent.

### U.S. PATENT NO. 8,447,607

38.     On May 21, 2013, the United States Patent and Trademark Office duly and legally issued the '607 Patent, entitled "Mobile Systems And Methods Of Supporting Natural Language Human-Machine Interactions." A true and correct copy of the '607 Patent is attached hereto as Exhibit 3.

39.     Dialect is the owner and assignee of all right, title, and interest in and to the '607 Patent, including the right to assert all causes of action arising under the '607 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

40.     The '607 Patent describes, among other things, a novel mobile system that identifies and uses context, prior information, domain knowledge, and user specific profile data to achieve a natural environment for users to submit natural language requests. '607 Patent, Abstract. The claimed invention creates, stores, and uses extensive personal profile information for each user to improve the reliability of determining the context of a request and presenting the expected results. *Id.* The claimed invention also provides a system that uses "multi-modal communications

that enable displaying of non-speech search results on a graphical interface" in conjunction with "speech commands" to execute requests. *Id.* at 21:49-60.

41.   The novel inventions of the '607 Patent are recited in the claims. For example, Claim 12 of the '607 Patent recites:

> 12. A method for processing natural language inputs, comprising:
>
> receiving, by one or more processors, a multi-modal natural language input from a user, the multi-modal natural language input including a natural language utterance and a non-speech input;
>
> generating, by the one or more processors, a non-speech transcription from the non-speech input;
>
> identifying, by the one or more processors, the user who provided the multi-modal natural language input;
>
> generating, by the one or more processors, a speech-based transcription based on a cognitive model associated with the user, wherein the cognitive model includes information on one or more prior interactions between the user and the device;
>
> generating, by the one or more processors, a merged transcription from the speech-based transcription and the non-speech transcription;
>
> identifying, by the one or more processors, an entry in a context stack, from among a plurality of entries that are in the context stack and that are each indicative of context, wherein the identified entry matches information in the merged transcription;
>
> identifying, by the one or more processors, a domain agent associated with the entry in the context stack;
>
> determining, by the one or more processors, a request based on the merged transcription; and
>
> communicating, by the one or more processors, the request to the domain agent, wherein the domain agent is configured to generate a response to the user.

'607 Patent, Claim 12.

### U.S. PATENT NO. 9,263,039

42.   On February 16, 2016, the United States Patent and Trademark Office duly and legally issued the '039 Patent, entitled "Systems And Methods For Responding To Natural

Language Speech Utterance." A true and correct copy of the '039 Patent is attached hereto as Exhibit 4.

43.     Dialect is the owner and assignee of all right, title, and interest in and to the '039 Patent, including the right to assert all causes of action arising under the '039 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

44.     The inventors of the '039 Patent conceived novel software techniques and structures to overcome challenges in natural language processing.  For example, Claim 13 recites a novel method of transcribing the speech and non-speech communications to create speech-based and non-speech-based textual messages, merging the speech-based and non-speech based textual messages; searching the merged query for text combinations, comparing the text combinations to context description grammar, generating a relevance score based on that comparison, selecting a domain agent based on the relevance score, and organizing content based on the results from the relevance score to generate a response:

> 13.  A method of processing speech and non-speech communications, comprising:
>
> receiving the speech and non-speech communications;
>
> transcribing the speech and non-speech communications to create a speech-based textual message and a non-speech-based textual message;
>
> merging the speech-based textual message and the non-speech-based textual message to generate a query;
>
> searching the query for text combinations;
>
> comparing the text combinations to entries in a context description grammar;
>
> accessing a plurality of domain agents that are associated with the context description grammar;
>
> generating a relevance score based on results from comparing the text combinations to entries in the context description grammar;
>
> selecting one or more domain agents based on results from the relevance score;
>
> obtaining content that is gathered by the selected domain agents; and

generating a response from the content, wherein the content is arranged in a selected order based on results from the relevance score.

'039 Patent, Claim 13.

45. Embodiments of these claimed elements are shown and described in the specification. For example, Figure 1 shows an overall diagrammatic view of the interactive natural language speech processing system according to one embodiment:



Additionally, Figure 5 shows a process for correctly interpreting a user's utterance according to one embodiment:



46. The specification of the '039 Patent describes how these claim elements help the overall system overcome the technical limitations of existing speech recognition systems. *See, e.g., id.* at 13:61-14:37 (describing comparison to context description grammar and relevance scoring); *id.* at 20:20-58 (describing improved word recognition accuracy using data from context description grammar); *id.* at 21:28-36 (describing a scoring system); *id.* at 23:19-29 (describing a scoring system); *id.* at 28:4-31 (describing the process of Figure 5); *id.* at 28:56-29:8 (describing selection of agents).

47. In explaining the reasons for allowing the claims, the United States Patent and Trademark Office described how the closest existing prior art did not disclose or teach the claimed combination of inventive elements:

> The prior art of record does not disclose or suggest the combination of a comparison module that compares text combinations to entries in a context description grammar, a scoring module that provides relevance scores based on the results from the comparison module, a domain agent selector that selects domain agents based on results from the scoring module, and a response generating module that

generates a response from the content, wherein the content is arranged in a selected order based on results from the scoring module, as required by independent Claim 1. Independent Claims 13 and 19 recite similar limitations, and are allowed for similar reasons as Claim 1.

'039 File History, Notice of Allowance and Fee(s) Due (October 26, 2015), Notice of Allowability at 2 (attached as Exhibit 5).

### U.S. PATENT NO. 9,734,825

48.     On August 15, 2017, the United States Patent and Trademark Office duly and legally issued the '825 Patent, entitled "Methods and Apparatus for Determining a Domain Based on the Content and Context of a Natural Language Utterance." A true and correct copy of the '825 Patent is attached hereto as Exhibit 6.

49.     Dialect is the owner and assignee of all right, title, and interest in and to the '825 Patent, including the right to assert all causes of action arising under the '825 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

50.     The '825 Patent describes, among other things, novel and inventive methods for receiving user generated natural language utterances. '825 Patent, Abstract. The methods enable obtaining information from a wide range of disciplines and presenting the information in a natural manner, even when the questions asked are incomplete, ambiguous, or subjective. *Id.* at 1:32-40.

51.     The novel inventions of the '825 Patent are recited in the claims. For example, Claim 5 of the '825 Patent recites:

> 5. A method for responding to a user generated natural language speech utterance, the method comprising:
>
> recognizing, by a speech recognition engine, one or more words in the user generated natural language speech utterance;
>
> receiving, at a parser, keyword and associated prior probabilities or fuzzy possibilities from a system agent or an active domain agent of a plurality of autonomous executable domain agents;

determining, for the natural language speech utterance, a score for each of at least two possible contexts, wherein the scores are determined based on the received keyword and associated prior probabilities or fuzzy possibilities;

determining by the parser, a domain for the user generated natural language utterance based on the recognized one or more words of the natural language utterance and the determined scores for each of the at least two possible contexts;

selecting at least one of the plurality of autonomous executable domain agents based, at least in part, on the determined domain, wherein each of the plurality of domain agents is configured to respond to queries and/or commands within a particular domain, wherein the particular domain indicates an area of expertise within which the domain agent is capable of responding to the queries and/or commands;

providing at least one query and/or command based on the natural language utterance to the selected at least one of the plurality of domain agents;

creating, by the selected at least one of the plurality of domain agents, one or more queries based on the at least one query and/or command;

sending, by the selected at least one of the plurality of domain agents, the one or more queries in an asynchronous manner to one or more local or external information sources.

52. In explaining the reasons for allowability of the claims of the '825 Patent, the United States Patent and Trademark Office described how the closest existing prior art did not disclose or teach the claimed combination of inventive elements, noting that the closest prior art references do not disclose or reasonably suggest the claimed combination of inventive elements:

[T]he prior art of record does not disclose or reasonably suggest a system and method responsive to a user generated natural language speech utterance, comprising a plurality of autonomous executable domain agents, each of which is configured to respond to queries and/or commands within a particular domain, wherein the particular domain indicates an area of expertise within which the domain agent is configured to respond to the queries and/or commands, a speech recognition engine configured to recognize one or more words in the user generated natural language speech utterance, and a parser configured to receive from a system agent or an active domain agent of the plurality of autonomous executable domain agents, keyword and associated prior probabilities or fuzzy probabilities, determine for the natural language speech utterance, a score for each of at least two possible contexts, wherein the scores are determined based on the received keyword and associated prior probabilities or fuzzy probabilities, determine a domain for the user generated natural language utterance based on the recognized one or more words of the natural language utterance and determined scores for each of the at least two possible contexts, select at

least one of the plurality of domain agents based, at least in part, on the determined domain, and provide at least one query and/or command based on the natural language utterance to the selected at least one of the plurality of domain agents, wherein each of the selected at least one of the plurality of domain agents is configured to create one or more queries based on the at least one query and/or command and send the one or more queries in an asynchronous manner to one or more local or external information sources . . . .

'825 File History, Notice of Allowance and Fee(s) Due (April 12, 2017), Notice of Allowability at 2-3 (attached as Exhibit 7).

## U.S. PATENT NO. 7,620,549

53.     On November 17, 2009, the United States Patent and Trademark Office duly and legally issued the '549 Patent, entitled "System and method of supporting adaptive misrecognition in conversational speech." A true and correct copy of the '549 Patent is attached hereto as Exhibit 8.

54.     Dialect is the owner and assignee of all right, title, and interest in and to the '549 Patent, including the right to assert all causes of action arising under the '549 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

55.     The '549 Patent describes, among other things, novel and inventive methods for processing user generated natural language utterances. '549 Patent, Abstract. The methods enable obtaining information from a wide range of disciplines and presenting the information in a natural manner, even when the questions asked are incomplete, ambiguous, or subjective. *Id.* at 1:47-57.

56.     The novel inventions of the '549 Patent are recited in the claims. For example, Claim 4 of the '549 Patent recites:

4. A method for processing natural language utterances, comprising:
receiving a natural language utterance at a multimodal device;
subsequently receiving a follow-up multimodal input at the multimodal device;
recognizing one or more words from the natural language utterance using a speech recognition engine coupled to the multimodal device;

generating an interpretation of the natural language utterance from the one or more recognized words using a parser coupled to the multimodal device, wherein the parser further generates a request based on the interpretation of the natural language utterance;

invoking a domain agent configured to process the generated request;

monitoring one or more actions associated with the domain agent processing the request using an adaptive misrecognition engine; and

determining that the interpretation of the natural language utterance was incorrect if one or more of the monitored actions include the follow-up multimodal input being presented proximate in time to the prior natural language utterance.

## DEFENDANT'S KNOWLEDGE OF VOICEBOX'S TECHNOLOGY AND THE ASSERTED PATENTS

57.     Defendant has had a longstanding and substantive relationship with VoiceBox Technologies, the prior owner of the Asserted Patents. This relationship spanned multiple years and included direct and repeated exposure to VoiceBox's patented technologies, including those covering natural language understanding (NLU) that now form the basis of the Accused Products.

58.     On or around 2012, VoiceBox executives, including Michael Kennewick, met with Comcast leadership at Comcast's headquarters. During this meeting—which was attended unexpectedly by current Comcast CEO Brian Roberts—VoiceBox presented its patented voice interaction technology. VoiceBox proposed integrating speech capabilities directly into Comcast's remote controls.

59.     Defendant and VoiceBox repeatedly discussed a long-term relationship between the companies and for VoiceBox to be involved in the "X1 voice rollout." Comcast noted after a meeting on September 6, 2012 that they "came away with a good sense of VoiceBox's technology and products." After the meeting, VoiceBox provided a statement of work to "provide a natural language experience for Comcast's X1 iOS apps covering the domain of Television and Movies." Further, VoiceBox provided a draft license to Comcast on October 19, 2012 that would grant

Comcast a non-exclusive license under the "VoiceBox Intellectual Property Rights" including patents to use VoiceBox's Licensed Software. Comcast did not sign the license.

60.     Defendant and VoiceBox continued discussions through 2015 of how VoiceBox could offer its services to Defendant. This included meetings showing VoiceBox's ASR / NLU capabilities and a live demo. There were also presentations noting the "Patented Contextual Voice and NLU technology" offered by VoiceBox.

```
From: Tran, Johnathan (Contractor) [Johnathan_Tran@cable.comcast.com]
Sent: Wednesday, June 17, 2015 5:49 AM
To: Gene Morel
Subject: RE: Comcast - Voicebox Discussion in Palo Alto

Hi Gene,

Thank you for taking the time to meet with us last week. It was a pleasure learning more about your ASR /
NLU capabilities and seeing a live demo. Following up on the discussion, can you please share a PDF of
the slides we reviewed? We have a few internal follow-up meetings over the next few days and it would
help to have the materials in addition to our notes. We will treat the materials as confidential and
anything you can share would be appreciated.

Looking forward to future discussions,
John
```

## VoiceBox Background

- Over a decade of voice and natural language technology and application experience
  - » Embedded, Cloud and Hybrid Platforms
- Patented Contextual Voice and NLU technology
  - » IEEE patent Power Ranking ranked VoiceBox 13th in the world for most impactful patents on software technology
- NLU (Natural Language Understanding) market leader
  - » Largest Car company in the world selected VoiceBox
    - • First embedded NLU telematics system, Toyota RX2009
    - • Helped Pioneer connected Car, Toyota/ Lexus 2011
  - » Largest Mobile Handset in the world selected VoiceBox
  - » Largest Cable company in the world selects VoiceBox????
- Expanding markets - Integrated Personal Assistants for Car, Home and Mobile
- Ship worldwide in over 23 languages and 200 millions devices in 2015
- V-Commerce (four patents granted and more to come)
- Over 300 of us work hard globally to make it happen!
  - » Bellevue, WA - Los Angeles - Tokyo - Taipei - Munich - Amsterdam

61. During this time period, Defendant and VoiceBox also conducted an alpha test of the VoiceBox voice remote technology with 200 Comcast employees. Defendant and VoiceBox then discussed entering into a definitive agreement when Defendant ceased communications.

62. On information and belief, Defendant incorporated key aspects of the patented VoiceBox technology into the design, development, and rollout of its Xfinity Voice Remote and associated services. Internal Comcast teams had been directly exposed to VoiceBox's patented systems, architecture, and capabilities across multiple interactions, presentations, and field testing sessions. These engagements gave Comcast actual knowledge of the Asserted Patents and the patented inventions.

63. Accordingly, Defendant became aware of the Asserted Patents and its infringement of those patents since its development of the Accused Products. At a minimum, on information and belief, Defendant subjectively believed that there was a high probability that the Asserted Patents existed and that its Accused Products infringed those patents and took deliberate action to avoid learning of these facts. Defendant's actions reflect not only knowledge of the Asserted Patents, but also a calculated decision to infringe with impunity. Its prolonged engagement with VoiceBox, coupled with its refusal to enter into an agreement and license, supports a finding of willful infringement.

## DEFENDANT'S USE OF THE PATENTED TECHNOLOGY

64. Defendant is one of the largest multinational mass media, telecommunications, and entertainment conglomerates, with a market capitalization of more than $129 billion and an annual revenue of more than $123 billion in 2024.

65. On information and belief, Defendant first released its Xfinity Voice Remote in 2015. https://corporate.comcast.com/stories/introducing-the-new-x1-voice-remote. By 2018,

Comcast reported that it has delivered over 18 million Xfinity Voice Remotes. *Id.* Defendant has several versions of the Xfinity Voice Remote (XR11, XR15, XR16, XR100, and XRA) (the "Accused Products"). Defendant infringes the Asserted Patents when providing the voice functionality of these remotes.

66.     Defendant actively advertises and instructs users in the use of the voice functionality with its Xfinity Voice Remotes.

## Voice command tips for the Xfinity Voice Remote

Learn voice command tips for using the Xfinity Voice Remote (Models XR11, XR15 and XR16) to change channels, search for shows, view recommendations, troubleshoot, view a bill, view an appointment, and more!

For additional details about the Xfinity Voice Remote for Xfinity X1 and Xfinity Flex, get to know the Xfinity Voice Remote.

**Note:** You can also type these commands instead of speaking them using the Xfinity Web Remote at remote.xfinity.com.

### Voice command tips

To change the channel using your Xfinity Voice Remote, press the **Voice** (**Microphone**) button, which activates Voice Control, and say something similar to the following voice commands:

- "ESPN"
- "Watch Disney Junior"
- "832"
- "Watch channel 810"
- "Turn on Discovery Channel"

https://www.xfinity.com/support/articles/voice-command-tips

Watch live camera feeds (if you have a compatible camera):

- "Show me front door camera."
- "Living room camera."
- "Pull up porch camera."

Watch recorded video (if you have 24/7 Video Recording):

- "Show me camera motion events."
- "Show camera clips."
- "Show me people clips."
- "Show clips of vehicles."
- "Show me car clips."

Troubleshoot TV issues:

- "Restart Box"
- "System Refresh"
- "Pair Remote"
- "Language"

https://www.xfinity.com/support/articles/voice-command-tips

**What voice commands can I use?**

The Voice Remote supports natural language speech recognition, so you can search by keyword or phrase. Use voice control to change channels, search for shows, get recommendations and more. Here are some examples of voice commands:

- "Watch NBC."
- "Find kids movies."
- "Launch Sports app.
- "Show me what's on tonight at seven."
- "Turn on Closed Captioning."
- "Show me settings."

**What happens to my voice commands after I speak into the remote?**

Voice commands are sent to us and our contracted service provider for processing. We use them for quality assurance, troubleshooting and customer support. We also use them to improve our products, services and voice recognition algorithms.

https://www.xfinity.com/support/articles/xr11-remote-faqs

## FIRST COUNT
## (Infringement of U.S. Patent No. 7,398,209)

67. Dialect incorporates by reference the allegations set forth in the prior paragraphs of the Complaint as though fully set forth herein.

68. The claims of the '209 Patent are valid and enforceable. In April 2024, Google filed a petition for *inter partes* review of the '209 Patent. In October 2024, the Patent Trial and Appeal Board ("PTAB") denied the institution of *inter partes* review.

69. The claims of the '209 Patent are directed to patentable subject matter. The '209 Patent is directed to innovations that improve systems and methods for responding to natural language utterances by, among other things, maintaining a dynamic set of prior probabilities or fuzzy possibilities, recognizing words and phrases contained in the received utterance using information in one or more dictionary and phrase tables, determining a context of the user utterance, and selecting and invoking domain agents. The inventive claimed steps of the '209 Patent improve on the processing of a natural language utterance by a user. The claimed inventions provide specific concrete solutions to the problem of natural language processing and understanding in existing systems.

70. On information and belief, in violation of 35 U.S.C. § 271(a), Defendant has directly infringed and continues to directly infringe one or more claims of the '209 Patent, including at least claim 1 of the '209 Patent, in the state of Illinois, in this District, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products and services that embody one or more of the inventions claimed in the '209 Patent, including the Accused Products.

71.     Each of the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention claimed by at least Claim 1 of the '209 Patent.

72.     Claim 1 of the '209 Patent recites:

1. A method responsive to a user generated natural language speech utterance, comprising:

    receiving the user generated natural language speech utterance, the received user utterance containing at least one request;

    maintaining a dynamic set of prior probabilities or fuzzy possibilities usable at each stage of processing the received user utterance;

    recognizing words and phrases contained in the received utterance using information in one or more dictionary and phrase tables;

    parsing the recognized words and phrases to determine a meaning of the utterance, wherein determining the meaning includes determining a context for the at least one request contained in the utterance based on one or more keywords contained in the recognized words and phrases;

    selecting at least one domain agent based on the determined meaning, the selected domain agent being an autonomous executable that receives, processes, and responds to requests associated with the determined context;

    formulating the at least one request contained in the utterance in accordance with a grammar used by the selected domain agent to process requests associated with the determined context;

    invoking the selected domain agent to process the formulated request; and

    presenting results of the processed request to the user, the presented results generated as a result of the invoked domain agent processing the formulated request.

'209 Patent, Cl. 1.

73.     On information and belief, each of the Accused Products implements a method recited in claim 1. *See* Appendix A. Fact and expert discovery are expected to confirm that the Accused Products infringe the '209 Patent, for which further evidence may lie in whole or in part in source code and technical documents to which Dialect does not presently have access.

74. Further, on information and belief, Defendant has actively induced and/or contributed to infringement of at least Claim 1 of the '209 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

75. Users of the Accused Products directly infringe at least Claim 1 of the '209 Patent when they use the Accused Products in the ordinary, customary, and intended way.

76. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Defendant knew infringes at least Claim 1 of the '209 Patent, or, alternatively, was willfully blind to the infringement.

77. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Defendant knew infringes at least Claim 1 of the '209 Patent, or, alternatively, was willfully blind to the infringement.

78. For example, on information and belief, Defendant actively advertised the Accused Products with detailed instructions to users to encourage infringement. *See* above.

79.     Defendant is not licensed or otherwise authorized to practice the claims of the '209 Patent.

80.     Thus, by its acts, Defendant has injured Dialect and is liable to Dialect for directly and/or indirectly infringing one or more claims of the '209 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

81.     As detailed above, on information and belief, Defendant became aware of the infringement of the '209 Patent in as early as 2012.

82.     At a minimum, Defendant has knowledge of the '209 Patent and its infringement at least as of the filing of the Complaint. Defendant has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '209 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Defendant aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '209 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Defendant's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

83.     Accordingly, Defendant's infringement of the '209 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

84.     As a result of Defendant's infringement of the '209 Patent, Dialect has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

85. On information and belief, Defendant will continue to infringe the '209 Patent unless enjoined by this Court. Defendant's infringement of Dialect's rights under the '209 Patent will continue to damage Dialect, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

**SECOND COUNT**
**(Infringement of U.S. Patent No. 8,447,607)**

86. Dialect incorporates by reference the allegations set forth in the prior paragraphs of the Complaint as though fully set forth herein.

87. The claims of the '607 Patent are valid and enforceable.

88. The claims of the '607 Patent are directed to patentable subject matter. The '607 Patent is directed to innovations that implement and improve a voice recognition system and natural language processing. The inventive claimed steps of the '607 Patent improve on the processing of a natural language utterance by a user. The claimed inventions provide specific concrete solutions to the problem of speech recognition in existing systems.

89. On information and belief, in violation of 35 U.S.C. § 271(a), Defendant has directly infringed and continues to directly infringe one or more claims of the '607 Patent, including at least claim 12 of the '607 Patent, in the state of Illinois, in this District, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products and services that embody one or more of the inventions claimed in the '607 Patent, including the Accused Products.

90. Each of the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention claimed by at least Claim 12 of the '607 Patent.

91. Claim 12 of the '607 Patent recites:

12. A method for processing natural language inputs, comprising:

receiving, by one or more processors, a multi-modal natural language input from a user, the multi-modal natural language input including a natural language utterance and a non-speech input;

generating, by the one or more processors, a non-speech transcription from the non-speech input;

identifying, by the one or more processors, the user who provided the multi-modal natural language input;

generating, by the one or more processors, a speech-based transcription based on a cognitive model associated with the user, wherein the cognitive model includes information on one or more prior interactions between the user and the device;

generating, by the one or more processors, a merged transcription from the speech-based transcription and the non-speech transcription;

identifying, by the one or more processors, an entry in a context stack, from among a plurality of entries that are in the context stack and that are each indicative of context, wherein the identified entry matches information in the merged transcription;

identifying, by the one or more processors, a domain agent associated with the entry in the context stack;

determining, by the one or more processors, a request based on the merged transcription; and

communicating, by the one or more processors, the request to the domain agent, wherein the domain agent is configured to generate a response to the user.

'607 Patent, Cl. 12.

92.     On information and belief, each of the Accused Products implements a method recited in claim 12. *See* Appendix B. Fact and expert discovery are expected to confirm that the Accused Products infringe the '607 Patent, for which further evidence may lie in whole or in part in source code and technical documents to which Dialect does not presently have access.

93.     Further, on information and belief, Defendant has actively induced and/or contributed to infringement of at least Claim 12 of the '607 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

94. Users of the Accused Products directly infringe at least Claim 12 of the '607 Patent when they use the Accused Products in the ordinary, customary, and intended way.

95. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Defendant knew infringes at least Claim 1 of the '607 Patent, or, alternatively, was willfully blind to the infringement.

96. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Defendant knew infringes at least Claim 12 of the '607 Patent, or, alternatively, was willfully blind to the infringement.

97. For example, on information and belief, Defendant actively advertised the Accused Products with detailed instructions to users to encourage infringement. *See* above.

98. Defendant is not licensed or otherwise authorized to practice the claims of the '607 Patent.

99.     Thus, by its acts, Defendant has injured Dialect and is liable to Dialect for directly and/or indirectly infringing one or more claims of the '607 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 12.

100.    As detailed above, on information and belief, Defendant became aware of the infringement of the '607 Patent in as early as 2012.

101.    At a minimum, Defendant has knowledge of the '607 Patent and its infringement at least as of the filing of the Complaint. Defendant has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '607 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Defendant aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '607 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Defendant's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

102.    Accordingly, Defendant's infringement of the '607 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

103.    As a result of Defendant's infringement of the '607 Patent, Dialect has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

104.    On information and belief, Defendant will continue to infringe the '607 Patent unless enjoined by this Court. Defendant's infringement of Dialect's rights under the '607 Patent

will continue to damage Dialect, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## THIRD COUNT
## (Infringement of U.S. Patent No. 9,263,039)

105.     Dialect incorporates by reference the allegations set forth in the prior paragraphs of the Complaint as though fully set forth herein.

106.     The claims of the '039 Patent are valid and enforceable. In April 2024, Google filed a petition for *inter partes* review of the '039 Patent. In October 2024, the Patent Trial and Appeal Board ("PTAB") denied the institution of *inter partes* review.

107.     The claims of the '039 Patent are directed to patentable subject matter. The '039 Patent is directed to innovations that implement and improve a voice recognition system and natural language processing. The inventive claimed steps of the '039 Patent improve on the processing of a natural language utterance by a user. The claimed inventions provide specific concrete solutions to the problem of speech recognition in existing systems.

108.     On information and belief, in violation of 35 U.S.C. § 271(a), Defendant has directly infringed and continues to directly infringe one or more claims of the '039 Patent, including at least claim 13 of the '039 Patent, in the state of Illinois, in this District, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products and services that embody one or more of the inventions claimed in the '039 Patent, including the Accused Products.

109.     Each of the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention claimed by at least Claim 13 of the '039 Patent.

110.     Claim 13 of the '039 Patent recites:

13. A method of processing speech and non-speech communications, comprising:

receiving the speech and non-speech communications;

transcribing the speech and non-speech communications to create a speech-based textual message and a non-speech-based textual message;

merging the speech-based textual message and the non-speech-based textual message to generate a query;

searching the query for text combinations;

comparing the text combinations to entries in a context description grammar;

accessing a plurality of domain agents that are associated with the context description grammar;

generating a relevance score based on results from comparing the text combinations to entries in the context description grammar;

selecting one or more domain agents based on results from the relevance score;

obtaining content that is gathered by the selected domain agents; and

generating a response from the content, wherein the content is arranged in a selected order based on results from the relevance score.

'039 Patent, Cl. 13.

111. On information and belief, each of the Accused Products implements a method recited in claim 13. *See* Appendix C. Fact and expert discovery are expected to confirm that the Accused Products infringe the '039 Patent, for which further evidence may lie in whole or in part in source code and technical documents to which Dialect does not presently have access.

112. Further, on information and belief, Defendant has actively induced and/or contributed to infringement of at least Claim 1 of the '039 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

113. Users of the Accused Products directly infringe at least Claim 1 of the '039 Patent when they use the Accused Products in the ordinary, customary, and intended way.

114. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Defendant knew infringes at least Claim 1 of the '039 Patent, or, alternatively, was willfully blind to the infringement.

115. On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Defendant knew infringes at least Claim 13 of the '039 Patent, or, alternatively, was willfully blind to the infringement.

116. For example, on information and belief, Defendant actively advertised the Accused Products with detailed instructions to users to encourage infringement. *See* above.

117. Defendant is not licensed or otherwise authorized to practice the claims of the '039 Patent.

118. Thus, by its acts, Defendant has injured Dialect and is liable to Dialect for directly and/or indirectly infringing one or more claims of the '039 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

119.    As detailed above, on information and belief, Defendant became aware of the infringement of the '039 Patent in as early as 2012.

120.    At a minimum, Defendant has knowledge of the '039 Patent and its infringement at least as of the filing of the Complaint. Defendant has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '039 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Defendant aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '039 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Defendant's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

121.    Accordingly, Defendant's infringement of the '039 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

122.    As a result of Defendant's infringement of the '039 Patent, Dialect has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

123.    On information and belief, Defendant will continue to infringe the '039 Patent unless enjoined by this Court. Defendant's infringement of Dialect's rights under the '039 Patent will continue to damage Dialect, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

### FOURTH COUNT
### (Infringement of U.S. Patent No. 9,734,825)

124.    Dialect incorporates by reference the allegations set forth in the prior paragraphs of the Complaint as though fully set forth herein.

125.    The claims of the '825 Patent are valid and enforceable. In April 2024, Google filed a petition for *inter partes* review of the '825 Patent.

126.    The claims of the '825 Patent are directed to patentable subject matter. The '825 Patent is directed to innovations that implement and improve a voice recognition system and natural language processing. The inventive claimed steps of the '825 Patent improve on the processing of a natural language utterance by a user. The claimed inventions provide specific concrete solutions to the problem of speech recognition in existing systems..

127.    On information and belief, in violation of 35 U.S.C. § 271(a), Defendant has directly infringed and continues to directly infringe one or more claims of the '825 Patent, including at least claim 5 of the '825 Patent, in the state of Illinois, in this District, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products and services that embody one or more of the inventions claimed in the '825 Patent, including the Accused Products.

128.    Each of the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention claimed by at least Claim 5 of the '825 Patent.

129.    Claim 5 of the '825 Patent recites:

5. A method for responding to a user generated natural language speech utterance, the method comprising:

recognizing, by a speech recognition engine, one or more words in the user generated natural language speech utterance;

      receiving, at a parser, keyword and associated prior probabilities or fuzzy possibilities from a system agent or an active domain agent of a plurality of autonomous executable domain agents;

      determining, for the natural language speech utterance, a score for each of at least two possible contexts, wherein the scores are determined based on the received keyword and associated prior probabilities or fuzzy possibilities;

      determining by the parser, a domain for the user generated natural language utterance based on the recognized one or more words of the natural language utterance and the determined scores for each of the at least two possible contexts;

      selecting at least one of the plurality of autonomous executable domain agents based, at least in part, on the determined domain, wherein each of the plurality of domain agents is configured to respond to queries and/or commands within a particular domain, wherein the particular domain indicates an area of expertise within which the domain agent is capable of responding to the queries and/or commands;

      providing at least one query and/or command based on the natural language utterance to the selected at least one of the plurality of domain agents;

      creating, by the selected at least one of the plurality of domain agents, one or more queries based on the at least one query and/or command;

      sending, by the selected at least one of the plurality of domain agents, the one or more queries in an asynchronous manner to one or more local or external information sources..

'825 Patent, Cl. 5.

130. On information and belief, each of the Accused Products implements a method recited in claim 5. *See* Appendix D. Fact and expert discovery are expected to confirm that the Accused Products infringe the '825 Patent, for which further evidence may lie in whole or in part in source code and technical documents to which Dialect does not presently have access.

131. Further, on information and belief, Defendant has actively induced and/or contributed to infringement of at least Claim 1 of the '825 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

132.    Users of the Accused Products directly infringe at least Claim 1 of the '825 Patent when they use the Accused Products in the ordinary, customary, and intended way.

133.    On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Defendant knew infringes at least Claim 1 of the '825 Patent, or, alternatively, was willfully blind to the infringement.

134.    On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Defendant knew infringes at least Claim 5 of the '825 Patent, or, alternatively, was willfully blind to the infringement.

135.    For example, on information and belief, Defendant actively advertised the Accused Products with detailed instructions to users to encourage infringement. *See* above.

136.    Defendant is not licensed or otherwise authorized to practice the claims of the '825 Patent.

137.    Thus, by its acts, Defendant has injured Dialect and is liable to Dialect for directly and/or indirectly infringing one or more claims of the '825 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

138.    As detailed above, on information and belief, Defendant became aware of the infringement of the '825 Patent in as early as 2012.

139.    At a minimum, Defendant has knowledge of the '825 Patent and its infringement at least as of the filing of the Complaint. Defendant has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '825 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Defendant aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '825 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Defendant's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

140.    Accordingly, Defendant's infringement of the '825 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

141.    As a result of Defendant's infringement of the '825 Patent, Dialect has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

142.    On information and belief, Defendant will continue to infringe the '825 Patent unless enjoined by this Court. Defendant's infringement of Dialect's rights under the '825 Patent

will continue to damage Dialect, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## FIFTH COUNT
### (Infringement of U.S. Patent No. 7,620,549)

143. Dialect incorporates by reference the allegations set forth in the prior paragraphs of the Complaint as though fully set forth herein.

144. The claims of the '549 Patent are valid and enforceable. In April 2024, Google filed a petition for *inter partes* review of the '549 Patent. In October 2024, the Patent Trial and Appeal Board ("PTAB") denied the institution of *inter partes* review.

145. The claims of the '549 Patent are directed to patentable subject matter. The '549 Patent is directed to innovations that implement and improve a voice recognition system and natural language processing. The inventive claimed steps of the '549 Patent improve on the processing of a natural language utterance by a user. The claimed inventions provide specific concrete solutions to the problem of speech recognition in existing systems..

146. On information and belief, in violation of 35 U.S.C. § 271(a), Defendant has directly infringed and continues to directly infringe one or more claims of the '549 Patent, including at least claim 4 of the '549 Patent, in the state of Illinois, in this District, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products and services that embody one or more of the inventions claimed in the '549 Patent, including the Accused Products.

147. Each of the Accused Products incorporates and/or implements elements that are identical or equivalent to each claimed element of the patented invention claimed by at least Claim 4 of the '549 Patent.

148. Claim 4 of the '549 Patent recites:

4. A method for processing natural language utterances, comprising:

receiving a natural language utterance at a multimodal device;

subsequently receiving a follow-up multimodal input at the multimodal device;

recognizing one or more words from the natural language utterance using a speech recognition engine coupled to the multimodal device;

generating an interpretation of the natural language utterance from the one or more recognized words using a parser coupled to the multimodal device, wherein the parser further generates a request based on the interpretation of the natural language utterance;

invoking a domain agent configured to process the generated request;

monitoring one or more actions associated with the domain agent processing the request using an adaptive misrecognition engine; and

determining that the interpretation of the natural language utterance was incorrect if one or more of the monitored actions include the follow-up multimodal input being presented proximate in time to the prior natural language utterance.

'549 Patent, Cl. 4.

149.    On information and belief, each of the Accused Products implements a method recited in claim 4. *See* Appendix E. Fact and expert discovery are expected to confirm that the Accused Products infringe the '549 Patent, for which further evidence may lie in whole or in part in source code and technical documents to which Dialect does not presently have access.

150.    Further, on information and belief, Defendant has actively induced and/or contributed to infringement of at least Claim 1 of the '549 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

151.    Users of the Accused Products directly infringe at least Claim 4 of the '549 Patent when they use the Accused Products in the ordinary, customary, and intended way.

152.    On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Products within the United States in the ordinary, customary, and

intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Defendant knew infringes at least Claim 1 of the '549 Patent, or, alternatively, was willfully blind to the infringement.

153.    On information and belief, Defendant's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Defendant knew infringes at least Claim 4 of the '549 Patent, or, alternatively, was willfully blind to the infringement.

154.    For example, on information and belief, Defendant actively advertised the Accused Products with detailed instructions to users to encourage infringement. *See* above.

155.    Defendant is not licensed or otherwise authorized to practice the claims of the '549 Patent.

156.    Thus, by its acts, Defendant has injured Dialect and is liable to Dialect for directly and/or indirectly infringing one or more claims of the '549 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

157.    As detailed above, on information and belief, Defendant became aware of the infringement of the '549 Patent in as early as 2012.

158.    At a minimum, Defendant has knowledge of the '549 Patent and its infringement at least as of the filing of the Complaint. Defendant has had, and continues to have, the specific

intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '549 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Defendant aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '549 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Defendant's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

159. Accordingly, Defendant's infringement of the '549 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

160. As a result of Defendant's infringement of the '549 Patent, Dialect has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

161. On information and belief, Defendant will continue to infringe the '549 Patent unless enjoined by this Court. Defendant's infringement of Dialect's rights under the '549 Patent will continue to damage Dialect, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and seeks relief from Defendant as follows:

a. For judgment that Defendant has infringed and continues to infringe the claims of the Asserted Patents;

b.     For a permanent injunction against Defendant and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert therewith from infringement of the Asserted Patents;

c.     For an accounting of all damages sustained by Plaintiff as a result of Defendant's acts of infringement;

d.     For a mandatory future royalty payable by Defendant in relation to each use of an Accused Product that is found to infringe one or more of the Asserted Patents and all future products which are not colorably different from products found to infringe;

e.     For a judgment and order finding that Defendant's infringement is willful and/or egregious and awarding to Plaintiff enhanced damages pursuant to 35 U.S.C. § 284;

f.     For a judgment and order requiring Defendant to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents as provided under 35 U.S.C. § 284;

g.     For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

h.     For such other and further relief in law and in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: August 29, 2025

Respectfully Submitted,

*/s/ David A. Gerasimow*
David A. Gerasimow
dave@gerasimowlaw.com
**GERASIMOW LAW**
P.O. Box 10861
Chicago, IL 60610
Tel: (312) 919-4254


Garland Stephens (*Pro Hac* forthcoming)
garland@bluepeak.law
Justin Constant (*Pro Hac* forthcoming)
justin@bluepeak.law
Robert Magee (*Pro Hac* forthcoming)
robert@bluepeak.law
Richard Koehl (*Pro Hac* forthcoming)
richard@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd.
PMB 8160
Houston, TX 77025
Tel: (281) 972-3036


**ATTORNEYS FOR PLAINTIFF**